UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**CHRISTOPHER RILEY,**

**Plaintiff,**

v,

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:18-cv-1099-TPK

OPINION AND ORDER

## OPINION AND ORDER

Plaintiff Christopher (Christine) Riley filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security. That final decision, issued by the Appeals Council on August 8, 2018, denied Ms. Riley's application for supplemental security income. Ms. Riley has now moved for judgment on the pleadings (Doc. 7), and the Commissioner has filed a similar motion (Doc. 13). For the following reasons, the Court will **DENY** the Plaintiff's motion, **GRANT** the Commissioner's motion, and dismiss this case.

## I. BACKGROUND

Plaintiff's application for supplemental security income was filed on October 20, 2014. She alleged that she became disabled on March 6, 2013, which date was later amended to October 20, 2014. Plaintiff was 29 years old on the date her application was filed.

After initial administrative denials of her application, Plaintiff appeared at an administrative hearing held by video on November 13, 2017. The Administrative Law Judge issued an unfavorable decision on December 5, 2017. He concluded that Plaintiff suffered from several severe impairments including lumbar spine disorder and sacroiliitis with chronic pain syndrome, gender dysphoria, affective disorder, and anxiety-related disorder. According to the ALJ, these impairments limited Plaintiff to the performance of a reduced range of sedentary. She could occasionally lift and carry up to ten pounds, could sit for six hours in a workday, could stand and walk for two hours, had to be able to change positions after one hour of sitting, needed to use a cane with her left hand, could not climb ladders, ropes, or scaffolds, could not balance on uneven or vibrating surfaces, could occasionally climb ramps and stairs, and could occasionally push, pull, and operate foot controls. Plaintiff also could not work at unprotected heights or operate heavy machinery. From a psychological point of view, Plaintiff was limited to performing simple, repetitive tasks in a non-production/fast paced work setting, could not

interact with the public, could have occasional interaction with supervisors and coworkers, could not perform team or tandem collaborative work, and could make simple, work-related decisions as well as adapt to simple changes in a routine work setting.

At the administrative hearing, a vocational expert, Ms. Baruch, was asked whether a person with that work capacity could do any job which existed in the national economy (Plaintiff had no past relevant work). She said that Plaintiff could work as a table worker, a touch-up inspector, and a surveillance system monitor. Ms. Baruch also testified that there were a total of 14,800 such jobs in the national economy. The ALJ accepted this testimony and found that because Plaintiff could perform substantial gainful activity, she was not disabled within the meaning of the Social Security Act.

Plaintiff, in her motion for judgment on the pleadings, raises a single issue which, she contends, supports a remand. She argues that the ALJ's residual functional capacity finding was based only on the ALJ's own lay opinion rather than the evidence and was therefore not supported by substantial evidence.

## II. THE KEY EVIDENCE

The issue which Plaintiff has raised deals primarily with the opinion evidence. The Court will briefly summarize the findings of the consultative and reviewing examiners in order to provide context for the analysis of Plaintiff's claim.

Plaintiff alleged both physical and psychological impairments. As to her physical impairments, she was examined by Dr. Balderman in 2015. He found some limitations on examination, including an abnormal gait and a reduced range of motion in the lumbar spine. The other findings, including the results of straight leg raising, were normal. His only diagnosis was lumbar spine pain. Dr. Balderman concluded that Plaintiff could perform the demands of work with only a mild limitation on repetitive bending and lifting. (Tr. 569-72).

A medical consultant, Dr. Mamaril, later reviewed the records and issued an opinion as to Plaintiff's residual functional capacity. Dr. Mamaril said that Plaintiff could perform a reduced range of medium work, limiting her to never climbing ropes, ladders, or scaffolds, and only occasional stooping, kneeling, crouching, and crawling. She also had to avoid workplace hazards like machinery and heights. Dr. Mamaril noted that Plaintiff's degenerative disc disease and degenerative joint disease of the right knee were the limiting factors. (Tr. 718-25).

Plaintiff was also seen inn 2015 by a consultative psychologist, Dr. Lin. That report noted that Plaintiff had been undergoing psychological treatment since age 17. Plaintiff said that she had difficulty sleeping and that her depressive symptoms had worsened in the past few months due to medical issues. She was experiencing dysphoric moods, psychomotor retardation, crying spells, diminished sense of pleasure, and social withdrawal, as well as recent suicidal ideation. Her mood was dysthymic and her recent and remote memory skills were moderately

impaired due to anxiety. Plaintiff was able to care for herself and do household chores and spent her days watching television, listening to music, and playing games on her phone. Dr. Lin diagnosed bipolar 2 disorder, panic attacks, and rule out PTSD. Dr. Lin concluded that Plaintiff was able to follow simple directions, perform simple tasks independently, maintain attention and concentration, learn new tasks, and perform complex tasks with supervision. She had a mild limitation in being able to maintain a regular schedule and in relating to others, and a moderate limitation in making appropriate decisions. Her ability to deal with stress was moderately to markedly limited, but these limitations did not interfere with her ability to function on a daily basis. (Tr. 564-67).

Plaintiff's mental residual functional capacity function was also analyzed by a consultant, Dr. Adamo. Dr. Adamo found that her impairments, which were described as a depressive disorder and an anxiety disorder, were not severe, causing no more than minimal functional limitations. (Tr. 726-41).

There are numerous treatment notes in the record as well, which are accurately summarized in Plaintiff's motion and memorandum. They are significant for only minimal objective findings, such as a small disc herniation at L1-L2, but, as noted by Dr. Castiglia, no foraminal compromise. Plaintiff underwent physical therapy but often reported that neither the therapy or medication made much of a difference in her pain level. She was also seen regularly for psychological treatment and counseling. Her GAF was rated at 62 in a progress noted dated February, 2017.

### III. STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence

standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

## IV. DISCUSSION

In her claim of error, Plaintiff notes, correctly, that the residual functional capacity adopted by the ALJ does not mirror precisely the findings of any of the medical examiners or consultants who expressed an opinion on that subject. She contends that some of the findings were stale, and that the ALJ had no basis apart from his own lay opinion upon which to translate the various findings into his residual functional capacity finding. She argues that if that finding is unreliable and unsupported, the possibility exists that her actual residual functional capacity is not compatible with substantial gainful activity, and that the case should therefore be remanded for further consideration.

The ALJ provided this explanation for his residual functional capacity finding. First, he discounted some of Plaintiff's testimony concerning her symptoms, noting that the objective medical evidence did not support extreme limitations. However, due the history of her treatment of back pain and need to use a cane for balance and support, he found that both medium and light work would exacerbate her symptoms. He further concluded that if she were limited to sedentary work with the ability to change positions, that would accommodate her pain and fatigue. (Tr. 16).

Next, after evaluating the medical evidence, the ALJ concluded that although Dr. Balderman did not find any significant functional limitations, the combination of Plaintiff's testimony and the later treatment notes undercut that conclusion to some extent. The ALJ did, however, accept Dr. Balderman's findings that Plaintiff's strength and functional mobility were intact "in an environment without heavy physical demands." (Tr. 17). He also pointed out that treatment records from 2015 were essentially consistent with Dr. Balderman's conclusions, but that more recent records, such as a January, 2017 note, showed worsening in Plaintiff's symptoms including diminished muscle tone, tenderness, and lower right extremity weakness. *Id*. That, in turn, justified the finding that Plaintiff was limited to sedentary work.

The ALJ then explored the issue of psychological limitations. He reviewed treatment notes made at about the time Plaintiff applied for benefits and characterized them as showing intact cognitive and intellectual skills. Turning to Dr. Lin's consultative evaluation, the ALJ found that it provided significant insight into Plaintiff's mental functioning and that it supported a finding that Plaintiff could do simple work and interact with others. That was reinforced by

more recent treatment records showing a stable mood and logical and coherent thinking. (Tr. 18-19).

Finally, the ALJ considered the conclusions of the non-examining reviewers, Drs. Mamaril and Adamo. He gave limited weight to Dr. Mamaril's opinion that Plaintiff could do medium work, again for reasons related to Plaintiff's testimony. He did the same with Dr. Adamo's opinion, concluding that it did not take into account evidence of work-related stressors. The ALJ therefore determined that his RFC finding was based on a combination of the objective and subjective factors present, including the fact that Plaintiff's treatment regimen was conservative and that Plaintiff was able to live independently. (Tr. 21-22). According to Plaintiff, however, the record does not contain substantial support for this conclusion.

It is often the case that an ALJ will arrive at a residual functional capacity finding which is not entirely in agreement with the available opinion evidence. At times, that can be error. The Commissioner, relying on decisions such as *Matta v. Astrue*, 508 Fed. Appx. 53 (2d Cir. 2013), argues that it is not error here, and that the ALJ had the discretion to make an RFC finding which is consistent with the record as a whole even if that finding does not track exactly any specific physician's opinion. The Court agrees both with this legal proposition and with the Commissioner's contention that the ALJ's decision complies with the applicable law.

*Matta*, like the present case, involved an RFC which took into account, but did not mirror, the opinions of a number of different sources. The Court rejected the identical argument made by Plaintiff here - that the ALJ must necessarily have used his own lay opinion to craft the RFC because it did not match any one source's opinion - holding that "[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). This Court has routinely applied that holding in similar situations. *See, e.g., Allen v. Comm'r of Social Security*, 351 F.Supp.3d 327 (W.D.N.Y. 2018).

To be sure, there are situations where an ALJ has made an incorrect or unsupported decision about a claimant's residual functional capacity even though all of the pertinent evidence was considered. For example, in *Pugh v. Comm'r of Social Security*, 351 F.Supp.3d 305 (W.D.N.Y. 2018), the Court overturned such a determination because the reasons given by the ALJ for reaching a conclusion that differed from the medical opinions were not consistent with the evidence. That illustrates the principle that, in a case such as this, the ALJ, while entitled to disagree with the medical opinions, can do so only for reasons which have a sound basis in the record itself. But when such reasons exist, the ALJ's decision is not subject to reversal; as this Court said in *Coleman v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 389, 400 (W.D.N.Y. 2018),

> Simply because the ALJ did not adopt precisely the opinions of [the medical sources] does not mean that the RFC assessment is not consistent with their assessment of Plaintiff's capabilities.... In sum, it is clear to the Court how the ALJ arrived at the assessed RFC. There are several opinions in the record that are consistent with the assessed mental limitations, and the ALJ's deviation from

those opinions was adequately described in the written determination.... Remand on this basis is not warranted.

Here, as set forth above, the ALJ provided a detailed explanation for the deviations he made from the various opinions contained in the record. Almost all of those deviations favored Plaintiff. In large part, he adopted a more favorable view of Plaintiff's capabilities because he credited Plaintiff's own testimony that she was more limited than the consultative or reviewing sources believed her to be. The reasons given support the ALJ's decision and they are based on the record. Plaintiff has not identified any specific inconsistencies between the ALJ's reasoning process and the medical evidence. Applying *Matta, Allen, and Coleman*, the Court concludes that there is no basis for remand here, and it will affirm the Commissioner's decision.

## V. CONCLUSION AND ORDER

For the reasons set forth in this Opinion and Order, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 7), **GRANTS** the Commissioner's motion (Doc. 13), and **DIRECTS** the Clerk to enter judgment in favor of the Defendant Commissioner and to dismiss this case.

/s/ **Terence P. Kemp**
**United States Magistrate Judge**